[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10303
_____

D.C. Docket Nos. 8:14-cv-01742-JSM; 8:13-bk-09719-CPM

In Re:  AVANTAIR, INC.,
      f.k.a. Ardent Acquisition Corp.,

                                      Debtor.
_____

CORRECTIONS CORPORATION OF AMERICA,
d.b.a. CCA of Tennessee, Inc.,

                                  Plaintiff - Appellant,

versus

BETH ANN SCHARRER,
as Chapter 7 for the Bankruptcy Estate of Avantair, Inc.,
THE N169SL FRACTIONAL OWNERS,

                                  Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 3, 2016)

Before TJOFLAT and ROSENBAUM, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

Is my airplane still my airplane when all of its parts have been removed? Or, as better characterized under the facts of this case, is your airplane now my airplane after my airplane's parts have been installed on yours? Appellant Corrections Corporation of America ("CCA") invites us to resolve this variation on the Paradox of Theseus's Ship by answering a resounding "yes" to the latter question and, in doing so, to vacate the sales approach adopted by the Bankruptcy Court in this case in favor of an approach that would recognize ownership interests of every aircraft owner in one another's planes. We decline CCA's invitation to drift into this philosophical turbulence, though, and affirm the well-grounded rulings of the Bankruptcy Court.[1]

This case arises out of the involuntary bankruptcy proceedings of Avantair, Inc., a company that ran a fractional-owner aircraft operation under Subpart K of Part 91 of the Federal Aviation Regulations, 14 C.F.R. §§ 91.1001 – 91.443. To participate in Avantair's program, CCA and others purchased at least one-sixteenth shares in specific airplanes via a Purchase Agreement. Then, through a

---

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

[1] The N169SL Appellees filed a motion to dismiss the appeal, arguing that CCA was not a "person aggrieved" by the Bankruptcy Court's order. Because CCA's ultimate financial position remains speculative at this point, we find CCA sufficiently aggrieved to pursue this appeal and deny the Appellees' motion. *See Atkinson v. Ernie Haire Ford, Inc.* (*In re Ernie Haire Ford, Inc.*), 764 F.3d 1321, 1325 (11th Cir. 2014).

"Management and Dry Lease Agreement," the owners leased their interests in the planes back to Avantair, who was responsible for scheduling flights at the owners' request and maintaining the planes in an airworthy condition. The interpretation of the program documents is the crux of this appeal.

When Avantair began experiencing financial troubles, the quality of its maintenance operations took a nose dive. To keep as many planes as possible flying, Avantair cannibalized parts from other planes in the fleet, effectively grounding the donor planes. In addition, Avantair failed to keep adequate safety records of the part transfers. When the Federal Aviation Administration caught wind of Avantair's activities, it grounded Avantair's fleet, forcing the company to cease operations and eventually enter bankruptcy.

To prevent loss or theft of the planes and to maximize their value to the estate, the Bankruptcy Trustee, in cooperation with some of the fractional owners, developed a plan to sell the aircraft. The sales proceeds would first be distributed to various categories of creditors, and any funds left over would then be distributed to the shareholders of the particular plane sold.

CCA objected to distributing the proceeds from the sale of a specific plane to just that plane's shareholders. First, CCA argued that fractional-share participants did not actually buy ownership interests in any plane but rather just purchased flight time. And even if the shareholders owned their planes, CCA

3

asserted, Avantair's pervasive parts-swapping practice essentially gave each participant an ownership interest in every other plane in the program. Accordingly, CCA demanded a "pooling" approach to the distribution of sales proceeds—proceeds would be held until every plane was sold, and then the entire fund would be distributed among the owners. To do otherwise, in CCA's view, would unjustly enrich the owners of the maintained and airworthy planes at the expense of the owners of the donor planes whose parts were used to maintain them. The Bankruptcy Court overruled CCA's objections, and the District Court affirmed that determination.

We review the Bankruptcy Court's findings of law *de novo* and its findings of fact for clear error. *Piazza v. Nueterra Healthcare Physical Therapy, LLC* (*In re Piazza*), 719 F.3d 1253, 1260 (11th Cir. 2013). The Bankruptcy Court's construction of contract language is a legal determination that we review *de novo*. *Equitable Life Assurance Soc'y v. Sublett* (*In re Sublett*), 895 F.2d 1381, 1383–84 (11th Cir. 1990).

In overruling CCA's objections, the Bankruptcy Court concluded that the program documents unambiguously designed a fractional-ownership program, with each shareholder necessarily owning a share of a specific plane. The Bankruptcy Court further found that the program documents executed by the participant-owners authorized Avantair to swap parts between planes to maximize the

4

efficiency of the program.  To the extent that Avantair failed to replace parts or maintain the donor planes, the Bankruptcy Court determined that the owners of such planes have a claim against Avantair (or the estate) for breaching its obligations to replace parts or maintain the donor planes but that the authorized swapping of parts did not and could not commingle the participants' ownership interests.  With the benefit of the parties' arguments and after a *de novo* review of the record, we discern no error in the Bankruptcy Court's reasoning or rulings and affirm the order of the District Court affirming the order of the Bankruptcy Court.

**AFFIRMED.**